**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**MOSEVELT JACKSON, JR. and LINDA FAYE
JACKSON,**

**Plaintiffs,**

**-vs-**                                                      **Case No.  A-09-CA-878-SS**

**WASHINGTON   COUNTY,   TEXAS,   J.W.
JANKOWSKI,   MARK   WHIDDEN,   ART
SENTENO, TONY KRUEGER, BRAD KULOW,**
**Defendants.**

_____

**O R D E R**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and

specifically Defendants' Motion for Summary Judgment ("Mot. SJ") [#37], and Plaintiffs' response

("Pl. Resp.") [#48] thereto.  Having reviewed the motions, the relevant case law, and the file as a

whole, the Court now enters the following opinion and orders GRANTING IN PART and

DENYING IN PART Defendants' motion.

**Background**

**I.      Factual Background**

This is a § 1983 civil rights case concerning an alleged illegal search and an alleged use of

excessive force by law enforcement.  Plaintiffs Mosevelt Jackson, Jr. ("Mr. Jackson") and Linda

Faye Jackson ("Mrs. Jackson") claim Defendant Washington County, through its Sheriff Defendant

Jankowski and law enforcement officers Defendants Whidden, Senteno, Krueger, and Kulow, violated Plaintiffs' Fourth Amendment rights in an incident that took place on December 6, 2007.[1]

Many of the background facts in this case are undisputed. On December 6, 2007, Washington County police received a report Mr. Jackson had been involved in "an altercation at his home with his son-in-law."[2] Complaint [#1] at ¶ 13; Mot. SJ, Ex. 7; Mot. SJ, Ex. 8. Having been informed the Jacksons were headed north on a road near their house, Defendants Whidden, Senteno, Krueger, and Kulow (the "Arresting Defendants") responded to the call and began driving in that direction from their respective locations, trying to overtake the Jacksons. Mot. SJ, Aff. B ("Kulow Aff.") at 2–3; Mot. SJ, Aff. C ("Krueger Aff.") at 2; Mot. SJ, Aff. D ("Senteno Aff.") at 2; Mot. SJ, Aff. E ("Whidden Aff.") at 1–2.[3] Before the Arresting Defendants were able to overtake the Jacksons, however, Defendant Senteno observed Mr. Jackson heading south, back toward his home. Senteno Aff. at 2. Senteno informed the other officers, and they all changed direction to follow the Jacksons' new course. *Id.* The Jacksons returned home, followed closely by the officers, who ultimately confronted Mr. Jackson in his front yard. Whidden Aff. at 2. Defendant Whidden approached Mr. Jackson while the other officers aimed firearms at Mr. Jackson. *Id.* Defendant Whidden ordered Mr. Jackson to get on the ground, and Mr. Jackson replied he was unable to do so because he had a bad back. *Id.*

---

[1] The Jacksons do not allege Defendant Jankowski participated personally in the arrest or the search. Their claim against him is based on his failure to properly train and supervise his officers.

[2] Evidence provided by Defendants indicated the caller told police Mr. Jackson was threatening his son-in-law with a nine millimeter handgun, and had fired it "a minute ago." Mot. SJ, Ex. 7 at 1.

[3] For the most part, the Arresting Defendants' affidavits are similar and consistent. The Court will therefore only cite to a single affidavit for the remainder of the factual summary.

Seeing Mr. Jackson was not obeying Whidden's command, Defendant Senteno moved to assist Whidden.  Senteno Aff. at 2–3.  Senteno also ordered Mr. Jackson to get on the ground, and Mr. Jackson replied by saying "something about his back."  *Id.* at 3.

Here, the parties' stories sharply diverge.  According to the Arresting Defendants, they physically forced Mr. Jackson to the ground, briefly struggled with Mr. Jackson to secure his arms, and, after Defendant Kulow threatened to shoot Mr. Jackson with a taser if he did not comply, ultimately succeeded in cuffing him.  Kulow Aff. at 2.  According to Mr. Jackson, the officers beat him, threw him to the ground, dragged him, put their knees in his back and side, and violently twisted his arm—in short, and in his own words, Mr. Jackson claimed the officers "beat the hell out of [him]."  Pl. Resp., Ex. H ("Jackson Depo.") at 30, 37.  Although they disagree how much force was required to do so, the parties agree Mr. Jackson was ultimately cuffed and secured in a police car.  Kulow Aff. at 2; Jackson Depo. at 38.

While Mr. Jackson was being secured, Kulow and Krueger began searching for the firearm Mr. Jackson had allegedly used to threaten his son-in-law.  Kulow Aff. at 2.  Kulow claims he observed a handgun magazine lying in plain view on the console of Mr. Jackson's vehicle.  *Id.*  After Krueger searched the vehicle and located a .25 caliber handgun (which was not the handgun they sought, as the report stated Mr. Jackson threatened his son-in-law with a nine millimeter), he and Whidden secured the scene around the vehicle so it would not be disturbed.  Whidden Aff. at 3.

Apparently, Kulow then turned his attention to Mrs. Jackson, informing Whidden she had been in the vehicle with Mr. Jackson.[4]  Kulow Aff. at 2.  The officers approached her and asked her

---

[4] The Court's recital of facts relating to Mrs. Jackson's arrest is hindered by the fact she failed to provide an affidavit; the Court therefore relies on the Arresting Defendants' affidavits, to the extent they are not inconsistent with Mr. Jackson's deposition testimony.

to identify herself, but she refused to do so.  *Id.*   The Arresting Defendants claim Mrs. Jackson attempted to enter her house, but Whidden prevented her from doing so, *id.*; Plaintiffs claim Mrs. Jackson was already in the house, and the officers kicked in the door and went inside.  Jackson Depo. at 38.  Mrs. Jackson persisted in refusing to identify herself and was ultimately arrested for her failure to do so.  Whidden Aff. at 3.

Again, there are differing versions of how Mrs. Jackson's arrest was effected.  Defendants Kulow and Whidden indicated Mrs. Jackson tried to pull away when they attempted to handcuff her, but made no mention of any struggle, violence, or injury.  Kulow Aff. at 3; Whidden Aff. at 3.  Mr. Jackson, apparently observing from the back of the patrol car in which he was secured, indicated officers kicked open his door, and "slammed" and "twisted" his wife.  Jackson Depo. at 38.  Mr. Jackson claimed he was shouting for the police to stop, as Mrs. Jackson had recently had surgery on her arm.  *Id.*

At some point, Krueger entered the Jacksons' home and, acting on information Senteno obtained by questioning Mr. Jackson, located the nine millimeter handgun.[5]  Krueger Aff. at 4. Krueger indicated in his report Senteno told him Mr. Jackson consented to the search.  Krueger Aff. at 4.  In his report, however, Senteno merely stated Mr. Jackson "did not want his stuff torn up" and told Senteno where the firearm was located.   Senteno Aff. at 3.  Plaintiffs argue Mr. Jackson's attempt to prevent damage to his property did not constitute consent to a search.  Pl. Resp. at 12.

---

[5] Krueger's affidavit suggested this occurred prior to the arrest of Mrs. Jackson, Krueger Aff. at 4, while Whidden's affidavit indicated his conversation with Mrs. Jackson was contemporaneous with Krueger's conversation with Mr. Jackson regarding the location of the firearm within the house.  Whidden Aff. at 3.  Plaintiffs, by contrast, indicated they were both already secured in police vehicles when the search took place.

Significantly, both parties agree other people were in and around the Jacksons' house during this incident.  Jackson Depo. at 38–39; Krueger Aff. at 4.

Plaintiffs claim they suffered injuries because of the Arresting Defendants' use of excessive force in making the arrests.  Complaint at ¶ 23.  Plaintiffs provided a document from "The Therapy Center" stating Mr. Jackson reported pain and tingling in his fingers as a result of the arrest.  Pl. Resp., Ex. A.  Plaintiffs provided a similar document from "The Therapy Center" relating to Mrs. Jackson.[6]  *Id.*, Ex. B.

## II.    Procedural Background

Plaintiffs filed their complaint on December 7, 2009.  They filed a single cause of action, alleging Defendants acted under color of state law to deprive them of their Fourth and Fourteenth Amendment rights.  Plaintiffs claimed they were physically injured by the excessive force of the police, and generally "experienced humiliation, emotional distress, pain and suffering, incurred expenses, and were otherwise damaged."  Complaint at ¶ 23.  They alleged Defendant Jankowski was liable for his failure to train the Arresting Defendants, correct their abusive behavior, or discourage their unlawful use of authority.  Plaintiffs further claimed these abuses and failures were consistent with a policy of Washington County.

On February 19, 2010, Defendants filed a motion for summary judgment on the basis of qualified immunity, which this Court dismissed for lack of evidentiary support.  On November 5, 2010, Defendants renewed their attack, filing a second motion for summary judgment.  In this motion, Defendants argued: (1) the Court should dismiss Plaintiffs' claims against Defendant

---

[6] Plaintiffs also included two photographs of Mr. Jackson.  Plaintiff's Supplemental Response [#48], Ex. I, J. Although the Court presumes they were provided to show Mr. Jackson's injuries, they are too unclear to be helpful.

Jankowski and the Arresting Defendants in their official capacities, because they are the same as his claim against Washington County; (2) Plaintiffs' claims against Defendant Jankowski should be dismissed because he was not personally involved in the alleged misconduct and there is no evidence he implemented an unconstitutional policy; (3) Plaintiffs' claims against the Arresting Defendants should be dismissed in light of the Arresting Defendants' qualified immunity; and (4) Defendant Washington County is entitled to summary judgment because Plaintiffs failed to provide evidence demonstrating a genuine dispute of material fact about the existence of an unconstitutional policy or custom.[7]

The Court agrees Plaintiffs have failed to meet their summary judgment burden with respect to, and therefore GRANTS Defendants' motion regarding, the following claims: (1) Plaintiffs' claims against Defendant Washington County and Defendant Jankowski; (2) Mrs. Jackson's § 1983 claim based on the use of excessive force; and (3) Plaintiffs' claim based on the illegal search of their home and seizure of the nine millimeter pistol.

However, the Court finds there is a genuine dispute of material fact regarding: (1) whether the Arresting Defendants injured Mr. Jackson through their use of excessive force; and (2) the reasonableness of Mrs. Jackson's arrest. Therefore, the Court DENIES Defendants' motion with respect to these claims against the Arresting Defendants. Accordingly, the Court will set for trial: (1) Mr. Jackson's § 1983 claims against the Arresting Defendants in their individual capacities for the use of excessive force; and (2) Mrs. Jackson's § 1983 claims against the Arresting Defendants in their individual capacities for her unlawful arrest.

---

[7] Although this is a motion for summary judgment, many parts of Defendants' motion ask the Court to dismiss claims rather than grant summary judgment on them.

## Analysis

### I.     Defendants' Motion for Summary Judgment [#37]

### 1.     Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.[8] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343

---

[8] Amendments effective December 1, 2010 changed Rule 56, moving language from 56(c) to 56(a), and changing the Rule to read "genuine dispute as to any material fact," rather than "genuine issue as to any material fact." FED. R. CIV. P. 56.

(5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## 2.    Defendant Washington County

### a.    County Liability Under § 1983 – Legal Standard

Municipalities and other local government bodies, such as counties, may be sued under § 1983. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). However, such an entity may not be held liable under the theory of respondeat superior, and thus "may not be held liable under § 1983 solely because it employs a tortfeasor." *Id*. A local government entity can only be held liable under § 1983 if a plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id*. A deprivation is pursuant to a "policy" when it "result[s] from the decisions of [the municipality's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id*. at 403–04. "Similarly, an act performed pursuant to a 'custom'

that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404. In Texas, "[t]he sheriff is without question the county's final policymaker in the area of law enforcement." *Colle v. Brazos Cty., Tex.*, 981 F.2d 237, 244 (5th Cir. 1993).

"Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving . . . issues of fault and causation is straightforward." *Brown*, 520 U.S. at 404. However, where a plaintiff attempts to impose liability upon a municipality for a facially lawful action that has led an employee to violate the plaintiff's rights, the plaintiff must demonstrate the municipal action was taken with deliberate indifference to known or obvious consequences. *Id.*

"Deliberate indifference" is a "stringent standard of fault," beyond "simple or even heightened negligence." *Id.* at 407, 410. The Fifth Circuit has emphasized this point: "'Deliberate indifference' implies a sense of callousness and is treated . . . as tantamount to intent . . . ." *Thompson v. Connick*, 578 F.3d 293, 298 (5th Cir. 2009). Further, the policy or custom must be the "moving force" behind the violation of the plaintiff's rights. *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has summarized these requirements in the following way: "The three attribution principles identified here-a policymaker, an official policy and the "moving force" of the policy-are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski*, 237 F.3d at 578.

b.     **Application**

Plaintiffs have failed to meet their summary judgment burden with respect to their § 1983 claims against Defendant Washington County.  Plaintiffs admit the Arresting Defendants were trained in search and seizure, Pl. Resp at 3; and Defendants provided evidence of the county's use-of-force policy, which reads: "It is the policy of this department that force be used only to effect a lawful arrest and/or stop violent behavior of an individual; the minimum amount of force necessary to accomplish the above stated purposes is to be used."  Defendants' Sealed Supplement [#38], Ex. 6 at 94.  Rather, Plaintiffs complain Washington County's policymaker, Defendant Jankowski, did not require "continuing education training on search and seizure and the use of force."  Pl. Resp. at 3.

Plaintiffs have failed to demonstrate a genuine dispute of material fact on two issues: (1) whether Washington County, through Sheriff Jankowski, acted with deliberate indifference; and (2) whether the failure to provide continuing education was the "moving force" behind the alleged violations of Plaintiffs' constitutional rights.

With respect to deliberate indifference in a failure-to-train case, the Fifth Circuit has stated: "Deliberate indifference generally requires a showing that the policymaker was made aware of the training deficiencies by at least a pattern of similar deprivations."  *Connick*, 578 F.3d at 298 (quotation omitted).  Although "in certain unique circumstances" a plaintiff can establish liability based on a single violation of rights, this requires a showing the policymaker failed to provide training in an area where, absent such training, deprivation of constitutional rights was a "highly predictable consequence"; failure to provide such obviously-needed training is seen to demonstrate the policymaker's deliberate indifference to constitutional rights.  *Id.*

-10-

Here, Plaintiffs have failed to provide evidence of a pattern of illegal searches, seizures, or uses of force sufficient to show a genuine dispute of material fact about Defendant Jankowski's deliberate indifference.  Nor have they provided sufficient evidence to raise a genuine dispute of material fact whether constitutional violations are the "highly predictable consequence" of a failure to provide *continuing* education to officers.

Similarly, Plaintiffs have failed to demonstrate a genuine dispute of material fact about whether Washington County's failure to provide continuing education was the "moving force" behind the alleged violations of Plaintiffs' constitutional rights.  As the Fifth Circuit has clarified, "[t]he deficiency in training must be the actual cause of the constitutional violation."  *Connick*, 578 F.3d at 300.  Plaintiffs have not provided sufficient evidence Washington County's failure to provide continuing education was the actual cause of the alleged violations of their rights.

**c.    Conclusion**

Absent evidence of a pattern of violations; failure to provide any training in an obviously critical area; admissions from the officers; or some other circumstantial evidence, the Court cannot attribute the allegedly improper actions of the Arresting Defendants to a "policy" or "custom" promulgated by Washington County through Sheriff Jankowski.  This is particularly true where, as here, the complained-of policy or custom is the failure to provide *additional* training.  Plaintiffs have simply not provided sufficient evidence to meet their summary judgment burden with respect to their § 1983 claims against Washington County.  The Court therefore GRANTS Defendants' motion on these claims.

Further, because there is generally no substantive difference between a suit against a government entity and a suit against its officers in their official capacities, the Court GRANTS

Defendants' motion for summary judgment on all claims against Defendants in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under [*Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978)], local government units can be sued directly for damages and injunctive or declaratory relief.").

**3.      Failure to Supervise – Defendant Jankowski**

**a.      Legal Standard**

"When . . . a plaintiff alleges a failure to train or supervise, the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quotation omitted).

**b.      Application**

As the elements of a failure to supervise claim indicate, in order to survive summary judgment Plaintiffs must show a genuine dispute of material fact about both causation and deliberate indifference. The Court has already found Plaintiffs failed to do so with respect to the policies or customs of Washington County. As Defendant Jankowski was the policymaker for Washington County, it is unsurprising Plaintiffs provide the same evidence for this claim as they do for their claim against Washington County. Although their failure to supervise claim focuses on Defendant Jankowski's supervision rather than a county policy or custom, Plaintiffs provided no evidence that changes the analysis. Therefore, for the foregoing reasons, the Court finds Plaintiffs have failed to satisfy their summary judgment burden with respect to deliberate indifference or causation.

c.      **Conclusion**

Plaintiffs have failed to meet their summary judgment burden with respect to their claims against Defendant Jankowski.  Therefore, the Court GRANTS Defendants' motion on this issue.

4.      **Use of Excessive Force – The Arresting Defendants**

a.      **Qualified Immunity**

Qualified immunity "shields Government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1945 (2009).  "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009).  The Supreme Court has articulated a two-part test for resolving government actors' claims of qualified immunity: a court must determine both (1) whether the plaintiff has sufficiently alleged a violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the actor's alleged misconduct.  *Id.* at 815–16.  With respect to the latter question, "a government actor is entitled to qualified immunity unless a reasonable official would have been on notice the conduct was unlawful." *Wernecke v. Garcia*, 591 F.3d 386, 393 (5th Cir. 2009). Although the Supreme Court once required these questions be answered in order, and doing so is still often advisable, courts have discretion to address either question first.  *Id.* at 818.  Finally, "[w]hen a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

**b.      Application**

There is a genuine dispute of material fact regarding the Arresting Defendants' use of excessive force against Mr. Jackson.  Mr. Jackson provided deposition testimony stating the Arresting Defendants—again, in Mr. Jackson's words—"beat the hell out of" him.  The Arresting Defendants, of course, provided evidence to the contrary.  However, for the purpose of summary judgment, the Court must resolve this factual dispute in Mr. Jackson's favor.  Mr. Jackson described a use of force that was clearly excessive in relation to legitimate law enforcement objectives, and which any reasonable officer would know to be a violation of the victim's constitutional rights.[9]  Mr. Jackson also provided deposition testimony regarding his injuries, including the pain he felt during the arrest.  Therefore, the Arresting Defendants' qualified immunity notwithstanding, Mr. Jackson has met his summary judgment burden with respect to his excessive force claim.

By contrast, Mrs. Jackson provided no such evidence.  Indeed, Mrs. Jackson provided neither deposition testimony nor an affidavit in support of her claims.  The only evidence the Court has to substantiate many parts of her claims are statements made by Mr. Jackson in his deposition.  By his own admission, Mr. Jackson was some distance away in the back of a patrol car, and apparently in great pain, when the officers arrested his wife.  Jackson Depo. at 38.  Obviously, then, Mr. Jackson was neither privy to the details of the exchange between Mrs. Jackson and the officers, nor in a good position to observe them from a distance.  And while the Court credits, as it must, Mr. Jackson's statement the police kicked in his door, and his statement they used substantial force against Mrs.

_____

[9] The Court is mindful the officers were responding to a situation in which Mr. Jackson may have been armed with a firearm, and that he did not comply with their orders to get on the ground.  However, Mr. Jackson described an assault that continued after he was already on the ground and any reasonable fear of his violent resistance had been extinguished.  To the extent the officers rely on the notion Mr. Jackson was resisting arrest to justify their use of force, the Court must also resolve that factual dispute in favor of Mr. Jackson, who claimed the officers did not even attempt to cuff him until after the beating.  Jackson Depo. at 38.

Jackson, this evidence is insufficient—particularly in light of Mrs. Jackson's silence on the matter—to defeat the Arresting Defendants' qualified immunity.

Without at least some testimony from Mrs. Jackson regarding her interaction with the Arresting Defendants, the Court cannot conclude: (1) the officers violated one of Mrs. Jackson's clearly established constitutional rights; (2) such a violation was objectively unreasonable under the circumstances; or (3) a reasonable jury could return a verdict in her favor.[10]  The Court therefore concludes Mrs. Jackson failed to meet her summary judgment burden with respect to her excessive force claim.

**c.    Conclusion**

Accordingly, the Court GRANTS Defendants' motion with respect to Mrs. Jackson's § 1983 claim for excessive force; and DENIES Defendants' motion with respect to Mr. Jackson's § 1983 claim for excessive force.

**5.    Illegal Search and Seizure – The Arresting Defendants**

Outside of Mr. Jackson's excessive force claims, Plaintiffs do not appear to challenge the legitimacy of Mr. Jackson's arrest.  However, they challenge the lawfulness of both Mrs. Jackson's arrest and the search of Plaintiffs' home.

**a.    Mrs. Jackson's Arrest**

**i.    Legal Standard**

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. CONST. amend. IV.  "The Fourth Amendment right to be free from arrest without probable cause has long been

---

[10] As noted above, Plaintiffs did not have to provide *much* evidence from Mrs. Jackson to survive summary judgment.  But, at least under the circumstances of this case, they had to provide *some*.

clearly established." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). Reasonable police officers are, of course, expected to know this. Therefore, if the officers arrested Mrs. Jackson without probable cause, they are not entitled to the protections of qualified immunity.

## ii.  Application

Mrs. Jackson appears to have been arrested for violation of Texas Penal Code § 38.02, "Failure to Identify." Whidden Aff. at 3. In relevant part, that section provides: "A person commits an offense if he intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information." TEX. PEN. CODE ANN. § 38.02(a). As Plaintiffs point out, this section can only be violated if one has already been arrested. Logic dictates, therefore, this section cannot itself serve as the basis for an arrest.[11] Moreover, although police officers need not be lawyers, they are expected to know enough about the law to make meaningful probable cause determinations prior to arrest.[12] The circumstances of this case are such that officers should have known Mrs. Jackson's failure to identify herself could not form the basis for her arrest. The Arresting Defendants are therefore not entitled to qualified immunity with respect to Mrs. Jackson's illegal seizure claim.[13]

---

[11] Another provision of § 38.02 makes it an offense to provide a false name, address, or date of birth under various circumstances. TEX. PEN. CODE ANN. § 38.02(b). However, there is no evidence Mrs. Jackson ever gave false information to police.

[12] The Court emphasizes this is not a case where it is second-guessing the reasonableness of an officer's probable cause assessment, an area in which police are properly afforded some deference. Instead, this is a situation where the statute's terms made it *impossible* for the officer to reasonably conclude he had probable cause.

[13] It is possible not every one of the Arresting Defendants is individually liable for Mrs. Jackson's arrest. However, as neither party briefed the issue, the Court declines to address it.

### iii.     Conclusion

Plaintiffs have demonstrated the existence of a genuine dispute of material fact regarding whether Mrs. Jackson's arrest was unreasonable.  The Court therefore DENIES Defendants' motion for summary judgment on this issue.

### b.     The Search of the House

### I.     Legal Standard

Warrantless searches or seizures inside a home are presumptively unreasonable.  *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).  However, this presumption can be rebutted if the government can demonstrate the "exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable."  *Id.* (quotation omitted).  Some exigencies courts have deemed sufficiently compelling to justify warrantless searches are "hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others."  *United States v. Maldonado*, 472 F.3d 388, 393 (5th Cir. 2006).

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."  *Maryland v. Buie*, 494 U.S. 325, 327 (1990).  "To justify a protective sweep, the government must show articulable facts which, taken together with rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."  *Maldonado*, 472 F.3d at 393.  "If reasonable minds could differ, we do not second-guess the judgment of experienced law enforcement officers concerning the risks of a particular situation."  *Id.*

ii.     **Application**

As noted above, the warrantless search of Plaintiffs' home was presumptively unreasonable. Therefore, in order to be entitled to qualified immunity, Defendants must demonstrate their search of Plaintiffs' home was justified by exigent circumstances. The Court finds they have offered evidence sufficient to do so.

The situation faced by officers was chaotic, uncertain, and potentially dangerous. They were responding to a report that Mr. Jackson not only had a nine millimeter handgun and was threatening another person with it, but that he had recently fired it. For reasons the officers might plausibly have believed false, Mr. Jackson refused to comply with their orders. Regardless of whose version of events is taken as true, the officers used substantial physical force in arresting Mr. Jackson. Mrs. Jackson was likewise uncooperative, and there is no dispute officers had to use some physical force to effect her arrest as well. Officers discovered a loaded handgun—but not the nine millimeter pistol they sought—in the Jacksons' vehicle; nor did they find the nine millimeter on either Mr. or Mrs. Jackson. Further, people unknown to the officers were in and around the house.

Thus, officers were faced with a situation in which at least one firearm was likely to be on the premises; the gun was potentially accessible by people unknown to, and unsecured by, the officers; and—especially if Plaintiffs' version of events is credited—these unknown people probably had reason to be hostile to the officers. Under such circumstances, the Court finds a reasonably prudent officer would be justified in believing one or more people in the house might be armed and present a danger to the officers.[14]

---

[14] Additionally, the Court finds the presence of unknown, unsecured, and likely hostile people in Plaintiffs' home would justify a reasonably prudent officer in believing the need to preserve evidence was sufficiently great that he or she could not afford to delay the search while a warrant was obtained.

This conclusion is consistent with *United States v. Maldonado*, 472 F.3d 388 (5th Cir. 2006), in which the Fifth Circuit upheld a warrantless search under circumstances similar to those in this case.  In *Maldonado*, law enforcement agents arrested one man, Mr. Castillo, in the driveway of the trailer home in which he was staying.  *Id.* at 392.  While officers were arresting Castillo, an unknown person peeked out of the door of the trailer home, then quickly withdrew and shut the door.  *Id.* Fearing for their safety because they lacked cover, the officers opened the door to the trailer home and arrested Maldonado when he exited.  *Id.*  Although Maldonado stated nobody else was in the trailer home, police nevertheless performed a protective sweep and discovered narcotics in plain view.  *Id.*  Maldonado moved to suppress the narcotics on the basis of the warrantless search, but the district court denied the motion because it found the search was justified by exigent circumstances. *Id.*  Maldonado appealed.  *Id.*

The *Maldonado* court found the district court "did not err in concluding that a reasonable officer would have been legitimately concerned for his safety and that of others on the scene during the arrest."  *Id.* at 393.  In support of its conclusion, the court observed Castillo's arrest in the driveway of the trailer home was "near enough to the trailer to place the agents in immediate danger."  *Id.*

In some ways, the case before this Court presents a stronger argument for the existence of exigent circumstances than *Maldonado*.  Specifically, the officers in *Maldonado* had no idea if there were weapons or other people in the trailer home after they arrested Maldonado.  *Id.* at 394.  Indeed, the limited evidence they had indicated there were no other people inside.  *Id.*  Here, by contrast, there were unknown people in and around the house, and at least one weapon unaccounted for.

-19-

The Court thus finds Defendants' warrantless search was justified by exigent circumstances.[15] Because this finding means the Arresting Defendants did not violate Plaintiffs' Fourth Amendment rights, the Court further concludes both (1) the Arresting Defendants are entitled to qualified immunity; and (2) the evidence offered by Plaintiffs is insufficient to meet their summary judgment burden regarding their § 1983 claim on this issue.

### iii.    Conclusion

The Arresting Defendants' search of Plaintiffs' home was justified by exigent circumstances. Therefore, their conduct did not offend the Fourth Amendment.  Thus, Plaintiffs have failed to show a genuine dispute of material fact about a violation of their rights, and the Arresting Defendants are entitled to qualified immunity.  Consequently, the Court GRANTS Defendants' motion for summary judgment on this issue.

### Conclusion

Plaintiffs have only met their summary judgment burden with respect to Mr. Jackson's § 1983 claim against the Arresting Defendants in their individual capacities for the use of excessive force; and Mrs. Jackson's § 1983 claim against the Arresting Defendants in their individual capacities for unreasonable seizure.

The Court grants summary judgment in favor of Defendants on all other claims: Plaintiffs' claims against Washington County and Defendant Jankowski fail because Plaintiffs did not demonstrate a genuine dispute of material fact about deliberate indifference or causation.  Further,

---

[15] *United States v. Watson*, 273 F.3d 599 (5th Cir. 2001), and *United States v. Howard*, 106 F.3d 70 (5th Cir. 1997), are also in accord.  Although the cases cited by the Court deal with narcotics, nothing in their holdings suggest they are limited to drug cases.  To the extent these cases rely on the notion drug traffickers are often armed and dangerous to support findings of exigent circumstances, those factors are likewise present here: Mr. Jackson was reported to be both armed and threatening.

Mrs. Jackson failed to provide evidence sufficient to defeat the Arresting Defendants' qualified immunity with respect to her excessive force claim.  Finally, the Court finds the officers' search of Plaintiffs' home was justified by exigent circumstances, and therefore did not constitute a violation of their Fourth Amendment rights.

Accordingly,

IT IS ORDERED THAT Defendants' Motion for Summary Judgment [#37] is GRANTED IN PART and DENIED IN PART;

IT IS FURTHER ORDERED THAT Defendants' motion is DENIED with respect to Mosevelt Jackson's § 1983 claims against Defendants Whidden, Senteno, Krueger, and Kulow in their individual capacities for the use of excessive force; and Linda Faye Jackson's § 1983 claims against the same Defendants for unreasonable seizure;

IT IS FURTHER ORDERED THAT Defendants' motion is GRANTED with respect to all other claims.

SIGNED this the 24th day of January 2011.

SAM SPARKS
UNITED STATES DISTRICT JUDGE